THE STATE OF KANSAS v. FRANK TULIP.

No. 390.* (60 Pac. 659.)

1. INTOXICATING LIQUORS— *Sufficient Information.* An information charging a misdemeanor in language as follows: "That on or about the 27th day of May, 1899, in the county of Cloud and state of Kansas, one F. T., whose true and correct name is to this informant unknown, if above is not correct, then and there being, without having first duly procured according to law, from the probate judge of Cloud county, Kansas, a permit to sell intoxicating liquors for medical; scientific and mechanical purposes, did then and there unlawfully sell and barter to one M. D. spirituous, malt, vinous and fermented and other intoxicating liquors, contrary to the law in such cases made and provided," is sufficiently formal to support a verdict of guilty.

2. JURORS— *Exemption—Personal Privilege.* Reversible error cannot be predicated upon the action of the trial court in over-

---

* Petition for order to certify denied by supreme court May 4, 1900.—REP.

ruling a challenge for cause to jurors who are either ministers of the gospel, over sixty years of age, or school-district officers. The exemption of such persons from jury service is a personal privilege only.

3. ———— *Lecturing by Court—Improper Language.* It is reversible error for a trial court, in lecturing a jury upon the necessity of agreeing upon a verdict, to use language reflecting upon the want of intelligence upon the part of jurors.

4. ———— *Evidence of Guilt—Instruction.* It is error for a trial court in a criminal case to instruct the jury: "If there is no evidence to support any of the counts, then you should acquit." The instruction is not a correct statement of law upon which a jury may act.

5. ———— *Instructions.* Alleged error in refusing to give instructions examined, and *held*, that the instructions, so far as applicable, were given in the court's general charge to the jury.

Appeal from Cloud district court; F. W. STURGES, judge. Opinion filed March 17, 1900. Reversed.

*Pulsifer & Alexander*, for appellant.

*G. M. Culver*, for The State.

The opinion of the court was delivered by

McELROY, J.: The appellant, Frank Tulip, was prosecuted in the district court of Cloud county upon an information, duly verified, containing five counts. The first count reads:

"That on or about the 27th day of May, A. D. 1899, in the county of Cloud and state of Kansas, one Frank Tulip, whose true and correct name is to this informant unknown, if above is not correct, then and there being, without having first duly procured according to law, from the probate court of Cloud county, Kansas, a permit to sell intoxicating liquors for medical, scientific and mechanical purposes, did then and there unlawfully sell and barter to one Minard Doak spirituous, malt, vinous and fermented and other intoxicating liquors, contrary to the law in such cases made and provided."

The second count of the information was the same, except that it charged a sale on the 7th day of June, 1899, made to one L. F. Bradley; the third count charged a sale made on the 3d day of June, 1899, to one ———; the fourth count charged a sale made on the 9th day of June, 1899, to one L. F. Bradley; and the fifth count charged him with keeping and maintaining a nuisance.

The defendant declined to plead, and a plea of not guilty was entered by direction of the court. At the trial the county attorney dismissed the third count, the court dismissed the fifth, and the case was submitted to the jury upon the first, second and fourth counts of the information. The jury returned a verdict that the defendant was guilty of the sale and offense relied on under the first and second counts of the information. The defendant's motion for a new trial was overruled. The court passed sentence upon the defendant Frank Tulip, that he be confined in the county jail of Cloud county for the term of sixty days; that he pay a fine of $200, and the costs of the prosecution; and that he be confined in the jail until the fine and costs are paid.

The defendant, as appellant; presents the record to this court for review and alleges error in the proceedings of the trial court. There are thirty-eight formal assignments of error. They present, however, but few questions for the consideration of the court. These questions we will consider, so far applicable to the first and second counts of the information, in their order.

*First.* That the court erred in overruling the defendant's motion to require the state to make the first four counts of the information more definite and certain. The appellant insists that neither of these

counts alleges "in issuable form" that the defendant had no permit to sell liquors.   We do not think the information is open to this objection.   It might have been in better form if the word "duly" had been stricken out of the information ; however, this is not a fatal objection.   The word "duly" as used is superfluous and may be so treated.   We think it sufficiently stated in each count that the defendant had no permit to sell intoxicating liquors.

It is also contended that these counts are bad for the reason that they allege a "sale" and "barter," and therefore charge two violations of the prohibitory law, the selling and bartering of liquors.   This contention is not tenable.   See *The State v. Schweiter*, 27 Kan. 499.

*Second.*  That the court erred in overruling defendant's challenge to certain jurors for cause.   The defendant challenged jurors Harrington, Price, Tyner and A. S. Harrington for cause.   He contends that these jurors were selected from the assessment rolls of 1899, instead of the assessment rolls of 1898.   This was a question of fact determined upon the evidence by the trial court against the contention of defendant. From the fact that the court overruled the objection it appears that the jurors were selected from the proper assessment rolls, and there is some evidence to support this conclusion.   The court is, therefore, precluded by the findings of the trial court from further inquiry in this respect.   Jurors Harrington and Price were ministers of the gospel, Tyner was sixtythree years of age, and A. S. Harrington was a schooldistrict clerk.   Section 17 of chapter 94, General Statutes of 1897 (Gen. Stat. 1899, § 3694), reads :

"The following persons shall be exempt from serving as jurors, to wit : All persons holding office under

the laws of the United States or this state; attorneys and counselors at law; physicians, ministers of the gospel, professors and teachers of colleges, schools and other institutions of learning, ferrymen, all members of any company of firemen organized according to law, all persons more than sixty years of age; and all other persons exempted by any other law of this state from serving on juries.''

While it appears that these jurors were exempt from jury service — two as ministers of the gospel, one as an officer, and the other as being over sixty years of age — it has, however, been held that these exemptions are personal privileges, and nothing more. (*Moore v. Cass*, 10 Kan. 288; *The State v. York*, 7 Kan. App. 291, 53 Pac. 838 )   The challenges for cause are specified in section 280 of chapter 95, General Statutes of 1897 (Gen. Stat. 1899, § 4533), as follows:

''If there shall be impaneled for the trial of any cause any petit juror who shall have been convicted of any crime which by law renders him disqualified to serve on a jury; or who has been arbitrator on either side relating to the same controversy; or who has an interest in the cause; or who has an action pending between him and either party; or who has formerly been a juror in the same cause; or who is the employer, employee, counselor, agent, steward or attorney of either party; or who is subpœnaed as a witness; or who is of kin to either party; or any person who shall have served once already on a jury as a talesman on the trial of any cause in the same court during the term, he may be challenged for such causes.''

The challenges for cause were properly overruled.

*Third.* That the court erred in the admission of testimony. Complaint is here made that the trial court permitted witnesses to give their conclusions and answer leading questions. There is little, if any, merit in this contention. There was no incompetent

The State v. Tulip.

testimony admitted, of which complaint is made, which could in any manner prejudice the rights of the defendant.

*Fourth.* That the court erred in refusing to permit defendant sufficiently to cross-examine witnesses. This contention is likewise without merit. The defendant was permitted to cross-examine witnesses at great length, and there is no just cause for complaint in this regard.

*Fifth.* That the court erred in refusing to instruct the jury as requested by the defendant. Complaint is made that the court erred in refusing to give the first, eighth and ninth instructions requested by the defendant. The first and eighth instructions requested by the defendant were given in the court's general charge, so far as applicable. As to the ninth instruction, the testimony is not preserved in the record and we are unable to say whether this instruction was proper or not. There is no evidence in the record before us to justify the court in giving it. No reversible error can be predicated upon the action of the court in refusing to give it.

*Sixth.* That the court erred in its instructions to the jury. Herein complaint is made that the instructions are inconsistent. In its general charge the court instructed the jury, among others things :

" Though testimony has been offered and received as to other alleged sales than those relied on for conviction, yet this testimony as to other sales than those relied on, for whatever purpose offered, whether in support of a nuisance or otherwise, cannot be considered in determining the guilt of the defendant of these on which the state has elected to rely for a conviction."

The appellant concedes that this instruction was

correct, but complaint is made of the further instruction as follows:

"You are the exclusive judges of the evidence and of what is shown thereby, and in determining this and the weight you will give to the testimony of the various witnesses, you will take into consideration their interest in the result of the suit, the probability and improbability in which they testify, their appearance and demeanor on the stand as well as all facts and circumstances shown. If you believe from the evidence that any witness has wilfully testified falsely to any material matter, then you are at liberty to disregard all such witness's testimony, or, in other words, to give it such weight as under all circumstances you think it is entitled to; and in determining the question as to whether the defendant is guilty of any of the charges upon which the state relies for conviction, you will consider the evidence and all the evidence."

The appellant contends that the expressions, "as well as all facts and circumstances shown," and "you will consider the evidence and all the evidence," are in conflict with the former instruction. These statements should have been confined to the evidence offered in support of, or tending to support, the different counts of the information upon which the state elected to rely for a conviction. If this was the only error in the case, however, we would be inclined to regard it as immaterial, inasmuch as the trial court instructed the jury as to what evidence could properly be considered in determining the guilt of the defendant upon the various counts.

The jury, after twenty-four hours' deliberation, were brought before the court, when the following proceedngs were had:

"Ques. by the court: The sheriff tells me that you have asked to be brought into court. What is it you want? Juror: Your honor, as foreman of the jury, I wish to state, as the case now stands, it is hopeless

for us to attempt to reach a verdict. One of the ju-
rors cannot understand why we should throw out two
of the counts and not throw them all out. We cannot
make him understand why that is the case.

"Court: I cannot take that statement at all at this
time, that it is hopeless to attempt to arrive at a ver-
dict. A lawsuit at best is an expensive affair to both
parties, and when a case has been tried as fully and
fairly as this one has, the jury certainly ought to
make some earnest effort to reach an agreement. . . .
As far as questions are concerned, if there are any
questions of law the court is here and will answer, or
he will try to answer any proper questions that any
juror may desire. If any juror wants to know why
those grounds or counts were dismissed I will tell him.
The fifth count of the information was dismissed be-
cause it was not as strictly formal as it might be, and
there was also some question as to the description of
the place where the alleged sales were supposed to
have taken place. . . . If the jury wish any in-
structions as to the law in the case the court will give
it. That is what the court is here for. As to the
questions of fact, those are for the jury to determine.
Where you have a jury of good, fair, honest men, good
responsible men, and the case has been fully and fairly
tried, as well as the court knows how to try it, you
ought to try and arrive at a verdict. Of course, no
one ought to be compelled to agree against his own
judgment, but when a case has been tried by twelve
good men, you ought to make a strong effort to reach
a verdict and have it ended. Another trial can prob-
ably prove no more or further than has been proved.
. . . And although you have been out all night
and feel anxious to be relieved, under all the circum-
stances I do n't feel that I can discharge you. . . .

"I do n't want to compel, neither is it the privilege
of the court to compel, jurors to find a verdict one
way or the other. What the court does want to do is
to try the case fully, on the trial, as to the evidence,
and instruct the jury fully as to the law. When the
court does this, the court wants the jury to decide as
to the facts. . . . I feel that further consideration

will be required. If there is any question as to the law, ask it and the court will instruct you. If there is any question as to the evidence, ask it and the court will have it read to you. In view of the time that it has taken to try this case, I do n't feel like discharging you now, and therefore I insist and direct you to consider your verdict further. I do n't want to do an injustice to you, and when it comes night, instead of keeping you up and confined in a small room, I will try and make some respectable arrangement for your personal convenience. I feel that further efforts ought to be made to reach an agreement in this case. If there is any question on the instructions of the court, the court is here to give it."

To all of which the defendant objected and excepted. The jury retired for further deliberation, and thereafter they were brought back into the court-room by request of the court.

"By the court: I called you back for this reason. There is some question as to the question you asked when you were in here a few moments ago. I understood the question to be, as asked by the foreman, as to why two of the counts were dismissed, and it seems that others think that it was whether the jury were required to find on three, or two, or one. . . . I would like to ask the jury what the question was.

"A juror: As to why we should throw out two of the counts and not throw them all out.

"Court: That should have been the question. If the evidence justifies, you should convict under the three counts. If the evidence warrants the conviction under two counts and not under three, you should convict under the two counts, and if the evidence warrants the conviction under only under one count, you should convict only as to the one count; if not as to either count, you should acquit. If there is no evidence to support any of the counts, then you should acquit.

"Ques. by juror: What are we going to do with a man who claims he do n't believe any of the witnesses at all?

The State v. Tulip.

"Court: I suppose you can argue with him. That is all I know to do. I do n't suppose there is any man but who will act with some reason. . . . I put you in the box because you are twelve decent, sensible men, and I presume you will act that way, and I do n't presume anything to the contrary. If you ask me what you are going to do with any man who acts the fool, but I do n't suppose that you are, any of you, that kind of men, I suppose that you are twelve honest, conscientious men, and will act conscientiously according to your best judgment. . . . I have answered fully as I understand you. If the question is as to the five counts, two are dismissed for the reasons I have stated. As to the three remaining counts, if the evidence warrants, you can find under the three, if the evidence warrants under two, and not three, under two, and if only under one, and not two or three, you can find guilty of one. If the evidence does not warrant it, find none. . . . If there is nothing further, you may retire with the officer."

. Thereupon the jury retired to their room and on the same day, about two o'clock P. M., returned into court their verdict.

The state relied for a conviction under the first count of the information upon the alleged sale of a glass of beer, made by the defendant to the witness Minard Doak, on the 27th day of May, 1899, in the presence of W. E. Strait; under the second count, upon the alleged sale of two glasses of whisky, made by the defendant to L. F. Bradley, on the 7th day of June, 1899, in the presence of John T. McCall; and under the fourth count, upon the alleged sale of a half-pint of whisky, made by the defendant to L. F. Bradley, on the 9th day of June, 1899. The first question asked by a juror indicates that a majority of the jury, at least, desired to throw out two counts; this would leave but one for consideration. After the court had ully instructed the jury in regard to this matter, a

juror asked, "What are we going to do with a man who claims he do n't believe any of the witnesses at all?" Whether this had reference to the witnesses upon the first, second or fourth counts, or to all of them, does not appear. Thereupon the court used the objectionable language above set out. This language, in our opinion, materially reflected upon the intelligence of the juror. The defense to the charge in the fourth count appears to have been that it was not supported by any testimony worthy of belief. The jury all appear to have come to that conclusion; they found defendant not guilty as to that count. The defense to the second count appears to have been the same. This charge rested upon a sale of two glasses of whisky made to the same party. If the juror was hesitating to believe any witness who testified as to the alleged sale under the second, or fourth count, in the one case, he was justified by the opinion of other jurors, and in the other by the theory of the defense. However, if he had all of the witnesses in mind who testified, and, if acting conscientiously, he was only exercising his prerogative as a juror. The jury are the sole judges of the evidence, its weight, and the credibility of witnesses. This practice of calling in jurors and lecturing them is not commendable; the practice is fruitful of much harm. (*The State v. Rogers*, 56 Kan. 362, 43 Pac. 256.)

The courts of last resort frequently set aside verdicts and order a new trial for the reason that the trial court used language not so objectionable as that used in this case. (*The State v. Bybee*, 17 Kan. 462; *The State v. Rogers*, supra; *State v. Ivanhoe*, 35 Ore. 150, 57 Pac. 317; *Randolph v. Lampkin*, 90 Ky. 552, 14 S. W. 538, 10 L. R. A. 87; *Whitelaw v. Whitelaw*, 83 Va. 40, 1 S. E. 407; *Cranston v. N. Y. C. & H. R. R. R. Co.*,

103 N. Y. 614, 9 N. E. 500; *McPeak v. The Mo. Pac. Ry. Co.*, 128 Mo. 617, 30 S. W. 170; *Southern Insurance Co. v. White*, 58 Ark. 277, 24 S. W. 425; *Sargent v. Lawrence*, 16 Tex. Civ. App. 540, 40 S. W. 1075; *Railroad Company v. Barlow*, 86 Tenn. 537, 8 S. W. 147; *Richardson v. Coleman*, 131 Ind. 210, 29 N. E. 909.)

And the court further misdirected the jury in this: "If there is no evidence to support any of the counts, then you should acquit." In this the court misdirected the jury. One may not be convicted simply because there is evidence to support some of the counts. A defendant may stand upon the presumption of his innocence until his guilt is established by competent evidence beyond a reasonable doubt.

From what we have said, it follows that the court erred in overruling the defendant's motion for a new trial. The judgment must be reversed and the case remanded for a new trial.